[Civ. No. 9854. Third Dist. Sept. 20, 1961.]

J. J. SILVA et al., Respondents, v. EUGENE W. PATTERSON et al., Appellants.

Alfred E. Frazier and Elmer R. Jennings for Appellants.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Respondents.

PEEK, J.—The present controversy arises out of a lease and contract of sale by which plaintiffs, as owners and operators of a dairy ranch, leased the same to defendants and by contract sold to the latter certain personal property then on the ranch. Subsequently, dissension arose between the parties, culminating in an action being filed by plaintiffs wherein they sought restitution of the ranch, forfeiture of defendants' interest in the personal property, damages for wrongful withholding of the premises and the personal property, judgment on a promissory note, attorneys' fees, and costs.

Plaintiffs and defendants were dairy operators of approximately 40 and 24 years' experience, respectively. The ranch always had been operated by plaintiffs as a Grade A dairy. On September 30, 1952, the lease and sale in question were executed. On May 28, 1955, the parties modified the terms of the original lease by a supplemental agreement by which defendants admitted that they were then in default, not only in the payment of the rent due to plaintiffs, but also on the interest due pursuant to the sales contract.

At the conclusion of the trial, the court found that the rental provisions set forth in the lease contained a latent ambiguity; that the provisions in question meant that the defendants were to pay rent based on the average price set by the Bureau of Milk Control for Grade A, Class 1 milk in the Tehama-Shasta marketing area; that the price so found could not be reduced by the deductions claimed by defendants; that defendants under such interpretation owed to the plaintiffs certain sums for rent past due; that defendants were also in arrears in interest and principal on the conditional sales contract; that defendants had no right, title, or interest in the premises or the personalty, except for certain enumerated exceptions; and that plaintiffs should have judgment on the note, together with attorneys' fees and costs.

Defendants' contentions are essentially attacks upon the sufficiency of the evidence, the first of which is that the plaintiffs failed to comply with the provisions of the lease relative to notice of default; therefore, their action was premature and hence, the trial court erred in overruling their motion to bar the introduction of any evidence.

The particular provision of the lease involved in this contention (Paragraph XVI) reads as follows:

"In the event of default by vendees and lessees in any of the provisions of this contract vendors and lessors shall give

notice in writing to vendees and lessees specifying the manner in which lessees and vendees are in default, and vendees and lessees shall have sixty days within which to correct said default. Should vendees and lessees fail to correct such default or defaults within said period all rights herein granted lessees and vendees shall terminate, and they shall peacefully deliver possession to vendors and lessors on demand.''

We find no merit in such contention. The supplemental agreement previously referred to was by its terms made effective only from June 1, 1955, to April 1, 1956. The notice of default was dated July 9, 1956, and served on defendants on July 12, 1956; the complaint was filed on September 20, 1956. The notice stated particularly, ''1. You are in default in the payment of accrued rent . . . in the sum of $8,751.16, less such sums, if any, as you may be legally entitled to credit against said sum under the terms of said lease.'' Thus, it appears that the defendants had, in accordance with the lease, more than 60 days in which to cure the default. The evidence in this regard is uncontroverted that they failed to do so. Furthermore, although the charge of default in the rent payments is general, nevertheless, it cannot be said that it was not sufficiently specific to conform to the provisions of the agreement and hence, the trial court did not err in finding that it was sufficient under the provisions of the lease.

In regard to the specific provision for the payment of rent (Paragraph III), the lease provided as follows:

''The rental for the period ending October 1, 1953 shall be the sum of fourteen thousand ($14,000.00) dollars payable in monthly installments of one thousand one hundred sixty-six dollars sixty-six cents ($1,166.66) beginning November 15, 1952. The rental thereafter shall be adjusted on the first day of October of each succeeding year and shall be increased or diminished in the same ratio as the average price for the proceedings [sic] twelve months of grade 'A' 3.5 milk, varies from $5.45 per hundred weight. The total annual rent shall be computed on October 1, of each year and the same shall be payable in twelve equal monthly installments payable on the 15th day of each month beginning in the month of November.''

In regard to this provision, the trial court found that it contained a latent ambiguity in that it failed to specify that the price to be used in adjusting the rental was the ''average price established by the California Department of Agriculture

for Grade A, Class 1, 3.5 milk, without any deductions whatever, in the Shasta-Tehama Marketing Area, during the preceding twelve months, . . ." We cannot agree with defendants' contention that the above-quoted provision contained in the lease was clear and unambiguous. The evidence showed that Grade A milk is divided into three classes with different prices applying to each of said classes; that the market price could range upward above the price established by the Department of Agriculture; that the word "average" as used in the lease might apply to "average" price for any preceding 12-month period; that the term could apply to the "average" between the prices for equal quantities of the classes; that the term might apply as to the prices set between various districts throughout the state; or that it might apply to the "average" price received by the defendants. Necessarily, therefore, the trial court properly received evidence on this issue.

 Defendants further contend that even assuming that the lease was ambiguous, the court's interpretation of the rental provision was not supported by the evidence. In this regard, it is sufficient to note that the record shows that defendants, during the second year of their operation of the ranch, paid rent to plaintiffs based upon the precise formula found by the trial court to represent the intent of the parties.

 Defendants further contend that under the provisions of the lease, plaintiffs were to provide them with 135 head of "milk cows." While it is true that the lease did so provide, the evidence indicates that the term "milk cows" did not mean that all were necessarily producing milk at that particular time, and that the parties further understood that such term meant dairy cattle of a breed capable of producing milk and not cows which, at a given time, were actually producing milk. It further appears that this question was resolved by a subsequently executed oral agreement; hence, it cannot be said that the finding of the trial court is not supported by the evidence.

 Defendants next contend that the trial court erred in failing to find that they were entitled to all of the deductions claimed in their cross-complaint. Obviously, the burden was upon defendants to show this damage, if any. The evidence introduced by them in support of such contention was scanty at best, the weight of which was for the trial court to determine. Absent any obligation of the trial court to believe such evidence, it necessarily follows no error may be predicated upon its refusal to find for the defendants on this issue.

Defendants' final contention that plaintiffs materially interfered with defendants' operation and control of the ranch is equally devoid of merit. It is true that the evidence discloses that plaintiffs did take small quantities of milk for their domestic use and that they did, after defendants were in default, show the ranch to another party identified as a prospective lessee, but certainly such interference was not of such a substantial nature as to require this court to interfere with the findings of the trial court.

The evidence presented at the trial was both voluminous and conflicting. Under such circumstances where the factual determination made by the trial court finds substantial support in the evidence, and we conclude it does, this court is bound by that determination even though the record contains ample evidence to the contrary.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.